```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
                   WESTERN DIVISION
```

| | |
|---|---|
| QUANNAH HARRIS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 18-2631-MSN-tmp |
| | ) |
| JERRY BIDDLE; JOHN McCLAIN; | ) |
| and ROXANNA GUMUCIO, | ) |
| | ) |
|     Defendants. | ) |

## REPORT AND RECOMMENDATION

Before the court is defendants Jerry Biddle, John McClain, and Roxanna Gumucio's motion for summary judgment.[1] (ECF No. 43.) For the following reasons, it is recommended that the defendants' motion for summary judgment be granted.

### I. PROPOSED FINDINGS OF FACT

This is a federal civil rights lawsuit. Quannah Harris is a barber in Memphis. (Harris Dep. at 7-8.) Harris owns and operates a barbershop. (Id.) Barbershops in Tennessee are regulated by the State Board of Cosmetology and Barber Examiners ("the Board"), a part of the Tennessee Department of Commerce and Insurance. See generally T.C.A. § 62-3-101. Jerry Biddle and John McClain are investigators for the Board. (Biddle Aff. at 1; McClain Aff. at

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

1.) Roxana Gumucio is the Executive Director of the Board. (Gumucio Aff. at 1.)

In her second amended complaint, Harris alleges that Biddle ran an extortion scheme targeting Memphis barbershops, demanding money or sexual favors in exchange for favorable evaluations. (ECF No. 21.) The complaint alleges that when Harris refused to provide money or sexual favors to Biddle, he, McClain, and Gumucio retaliated by writing false, unfavorable inspection reports and forging Harris's signature (or those of Harris's employees) on those inspection reports. (Id.) The complaint specifically alleges four documents were falsified in this manner and that Harris discovered these forgeries on September 17, 2017. (Id.) Those four documents are attached to the complaint as Exhibits A, B, C, and D. (Id.) The complaint alleges that this violated Harris's and her barbershop's constitutional rights to procedural and substantive due process. (Id.)

Biddle, McClain, and Gumucio moved to dismiss the complaint. (ECF No. 29.) Their motion was granted in part. (ECF No. 41.) Harris's procedural due process claim was dismissed, as were all claims brought by Harris's barbershop. (Id.) However, the court allowed Harris's substantive due process claim to move forward. (Id.)

Biddle, McClain, and Gumucio now move for summary judgment.

In support of that motion, Biddle, McClain, and Gumucio each submitted affidavits that deny an extortion scheme existed. (Biddle Aff. at 1; McClain Aff. at 1; Gumucio Aff. at 1.) Defendants point out that Harris now concedes that Biddle never asked her for money or sexual favors. (Harris Dep. at 77.) Moreover, Harris has not submitted any evidence that Biddle has ever asked for or accepted money or sexual favors from anyone in exchange for favorable inspection reports. Although Harris testified that Biddle once made an offensive sexual remark about her appearance and that Biddle asked employees at Harris's barbershop on dates during inspections, (Harris Dep. at 77-80), Harris also testified that she does not believe Biddle's propositioning of employees during inspections was an effort to exchange dates for higher scores or to be in return for any action as an inspector. Harris testified that, in her view, "[h]e's just asking these girls out." (Harris Dep. at 79.)

Biddle, McClain, and Gumucio also each deny forging any signatures, including on Complaint Exhibits A, B, C, and D. (Biddle Aff. at 1; McClain Aff. at 1; Gumucio Aff. at 1.) Complaint Exhibit A is a transcript of an interview McClain conducted with Harris. (ECF No. 21, Exhibit A.) Harris's signature appears on the bottom of each page of the transcript next to a statement affirming that Harris read the transcript and agreed it was accurate. (Id.) Harris

agrees this is her signature but disagrees that she was given the opportunity to read the transcript before signing. (Harris Dep. at 29.) Rather, Harris states that McClain recorded the conversation and told her he would be preparing a transcript of the interview. (Harris Dep. at 29; Harris Aff. at 1.) Harris further states that McClain then asked Harris to sign the transcript without showing her what it said. (Id.) Harris signed the transcript. (Id.) Harris later learned that her signature was notarized on the transcript and is "pretty sure" the transcript leaves out some of her answers to certain questions. (Id. at 28-31.) Otherwise, Harris concedes the transcript is "pretty accurate[.]"(Id. at 28.) Harris further contends McClain forged her signature in his notary book entry memorializing the notarization of Complaint Exhibit A. (Harris Aff. at 1.)

Complaint Exhibits B and C are notice of violation reports provided to Harris's barbershop and purportedly signed electronically by an employee of Harris's barbershop. (ECF No. 21, Exhibits B & C.) Harris asserts these documents are not originals and that the originals were signed by an employee of Harris's barbershop using a pen. Harris has supported this claim with an affidavit from the employee whose electronic signature is on the document. (Robinson Aff. at 1.) In that affidavit, Harris's employee states that she signed Exhibits B and C with a pen and

-4-

that the original documents must have been replaced with electronic versions. (Robinson Aff. at 1.) Robinson's affidavit does not state whether Complaint Exhibits B and C were altered in any other way.

Exhibit D is an inspection sheet signed by Biddle that claims Harris's barbershop was not open when he came to inspect it. (ECF No. 21, Exhibit D.) There is some ambiguity about whether Harris's shop was open for inspection when the form was filled out. The undersigned need not delve deeply into this ambiguity to resolve this motion because (1) nothing about Exhibit D suggests it was filled out as part of an extortion scheme and (2) Harris has submitted a letter she wrote to the Board on January 23, 2016, in which she acknowledges knowing about Complaint Exhibit D and contends it is a forgery. (ECF No. 51-16.) For the reasons discussed below, these findings are sufficient to resolve this motion.

The above findings of fact are based solely on the admissible relevant evidence from the record and, when appropriate, concessions made in the parties' briefing. Harris has attempted to rely on a significant amount of unsworn hearsay in her arguments against this motion, often presented by explaining what various persons would testify to if called at trial. Because Harris cannot use unsworn hearsay to defeat a well-supported motion for summary judgment, the undersigned does not — and under the Federal Rules,

cannot — consider those statements as evidence here.

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden to "demonstrate the absence of a genuine [dispute] of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991).

The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence and are not sufficient to defeat a well-supported motion for summary

-6-

judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). Similarly, a court may not consider inadmissible unsworn hearsay in deciding a motion for summary judgment. Tranter v. Orick, 460 F. App'x 513, 514 (6th Cir. 2012). In order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support its position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252). "In making this assessment, [the court] must view all evidence in the light most favorable to the nonmoving party." McKay v. Federspiel, 823 F.3d 862, 866 (6th Cir. 2016).

**B.  Substantive Due Process**

A claim under 42 U.S.C. § 1983 has two elements: "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003) (quoting Ellison v. Garbarino, 48 F.3d 192, 194 (6th Cir. 1995)). Harris's only remaining claim at this point in the litigation is a purported violation of her Fourteenth Amendment right to substantive due process. The court allowed that claim to survive past the pleading stage because the allegations in Harris's complaint implicated her substantive due process rights to be free of attempted sexual extortion and to be free of government action

that shocks the conscience.

At this summary judgment stage, however, it is clear from the record the allegations in Harris's complaint regarding extortion are without any evidentiary support. There is no evidence that any of the defendants extorted Harris or anyone else. Harris has not shown that a reasonable jury could conclude she was deprived of a fundamental right protected by the Due Process Clause.

Even absent the deprivation of a fundamental right, substantive due process is violated by government action that "shocks the conscience." Range v. Douglas, 763 F.3d 573, 588 (6th Cir. 2014). This is a demanding standard. Action by a government official "violates substantive due process only if it can be characterized as 'arbitrary, or conscience shocking, in a constitutional sense.'" Handy-Clay v. City of Memphis, 695 F.3d 531, 547 (6th Cir. 2012) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)) (citation and internal quotation marks omitted). "[T]his characterization applies to only the most egregious official conduct, conduct that is so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency." Id. at 547-48 (internal citations and quotations omitted). "The conscience-shocking limit on substantive due process claims serves to keep the doctrine from expanding to cover administrative incompetence or irresponsibility." Brown v. Detroit

-8-

Pub. Sch. Cmty. Dist., 763 F. App'x 497, 504 (6th Cir. 2019) (citing Lewis, 523 U.S. at 848). Even unquestionably inappropriate conduct by government officials sometimes fails to meet the shocks-the-conscience standard. For example, a police officer falsely writing parking tickets for the sole purpose of harassing someone the officer got into a fight with does not qualify. Vasquez v. City of Hamtramck, 757 F.2d 771, 773 (6th Cir. 1985).

Drawing all inferences in favor of Harris based on the evidence presented, a reasonable jury could not conclude that she has shown conduct that rises to the level of the shocks-the-conscience standard. The various deficiencies Harris has identified in Exhibits A through D do not constitute a violation of the right to be free of government action that shocks the conscience because controlling authority has established that far more egregious conduct does not meet the shocks-the-conscience standard. Similarly, Biddle's single offensive remark towards Harris and unprofessional behavior does not rise to the level of a constitutional violation. See Chambers v. Tennessee Bd. of Regents, No. 2:16-CV-2851-JPM-dkv, 2017 WL 3218075, at *9 (W.D. Tenn. July 28, 2017). It is recommended that the motion for summary judgment be granted.

C.   **Statute of Limitations**

In addition, Harris's claim regarding Complaint Exhibit D is

-9-

barred by the relevant statute of limitations.

"The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." Howell v. Farris, 655 F. App'x 349, 351 (6th Cir. 2016) (internal citations and quotations omitted). In Tennessee, the applicable statute of limitations runs for one year. T.C.A. § 28-3-104(a). "Although the applicable time period is borrowed from state law, the date on which the statute of limitations begins to run . . . is a question of federal law." Howell, 655 F. App'x at 351. "Ordinarily, the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." Id.

Harris was aware of the purported deficiencies in Complaint Exhibit D on or before January 23, 2016. (ECF No. 51-16.) The statute of limitations thus expired for any § 1983 claims about Complaint Exhibit D on January 23, 2017. Harris's original complaint was filed on September 14, 2018. (ECF No. 1.) Harris is thus time-barred from pursuing claims related to Exhibit D.

**D.   Harris's New Claims**

In her brief, Harris also argues that the defendants have violated her Fourth and Seventh Amendment rights, her Fourteenth Amendment equal protection rights, her rights under Title VII, as

-10-

well as her rights under 21 C.F.R. §§ 111-111.300, a set of federal regulations governing the submission of electronic signatures to the federal Food and Drug Administration, and 18 U.S.C. § 494, a criminal statute about forgeries made to defraud the federal government. Harris also argues that the defendants violated various state laws and regulations about the proper manner for notarizing documents and inspecting barbershops.

"[A] plaintiff may not expand his claims to assert new theories for the first time in response to a summary judgment motion." Desparois v. Perrysburg Exempted Vill. Sch. Dist., 455 F. App'x 659, 666 (6th Cir. 2012). Allowing such claims "would subject defendants to unfair surprise." Tucker v. Union of Needletrades, Indus. & Textile Employees, 407 F.3d 784, 788 (6th Cir. 2005). This rule applies to everyone, including litigants proceeding *pro se*. Watkins v. Saemenes, No. 18-2289-SHL-dkv, 2019 WL 1052041, at *6 (W.D. Tenn. Feb. 8, 2019), report and recommendation adopted, 2019 WL 1053640 (W.D. Tenn. Mar. 5, 2019).

Harris did not assert claims based on any of these legal theories in her complaint, but rather asserted them for the first time in response to this summary judgment motion. The undersigned thus declines to consider them. Furthermore, the undersigned notes that Harris has not presented evidence to support any of these claims that would be sufficient to survive a motion for summary

judgment.

### III.  RECOMMENDATION

For the reasons above, it is recommended that defendants Jerry Biddle, John McClain, and Roxanna Gumucio's motion for summary judgment be granted.

Respectfully submitted,

<pre>
                    s/ Tu M. Pham
                    TU M. PHAM
                    United States Magistrate Judge

                    February 26, 2020
                    Date
</pre>

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS.  ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2).  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**